# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| CURTIS BETHEA, | : | No. 3:19cv37 |
| --- | --- | --- |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | : | |
| Defendant | : | |

## **MEMORANDUM**

Presently before the court is the Report and Recommendation ("R&R") of Magistrate Judge Martin C. Carlson, wherein Judge Carlson recommends that this action be remanded to the Commissioner of Social Security ("Commissioner") for a new administrative hearing. (Doc. 17). The government objects to the R&R arguing that the Administrative Law Judge ("ALJ") properly discounted the medical opinion of Dr. Raymond Dahl, the plaintiff's treating physician. This matter is now ripe for the court's disposition.

---

[1] At the time the case was filed, the Acting Commissioner of Social Security was Nancy A. Berryhill, and thus, plaintiff named her as the defendant. Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. See OFFICIAL SOCIAL SECURITY WEBSITE, https://www.ssa.gov/agency/commissioner.html (last accessed December 6, 2019). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, as the new Commissioner of Social Security, Andrew M. Saul is automatically substituted for the original defendant. FED. R. CIV. P. 25(d).

**BACKGROUND**[2]

On January 22, 2016, the plaintiff, Curtis Bethea, applied for benefits under Title II and Title XVI of the Social Security Act, alleging an onset of disability beginning on July 24, 2014 due to the combined effects of joint disease in his hips and knees along with degenerative disc disease in his spine. (Doc. 9-3, Administrative Record at (hereinafter "R. at") 125, 127). At the time of this disability application, Bethea, who was born in November of 1968, was approximately 45 years old. (R. at 133). Bethea had a limited education, having attended school through the 11th grade, and had a vocational history in heavy-to-medium work, having been employed as a laborer and warehouse worker. (R. at 133).

Bethea also suffered from a cascading array of orthopedic impairments, including conditions which had spanned nearly a decade and had required significant treatment beginning as early as 2008. (R. at 350-90). In the course of this past ten years, Bethea had been diagnosed with bilateral osteoarthritis in both knees, severe lumbar spinal stenosis with disc extrusion, and bilateral necrosis of both hips. (R. at 127). As a result of his hip conditions, Bethea had undergone a left hip replacement in 2013, (R. at 130), and reported at his August

---

[2] This background section is derived from the R&R with only minor stylistic changes. (Doc. 17, at 2-7). Neither party objected to the R&R's recitation of these facts.

2

2017 disability hearing that he was scheduled to undergo a right hip replacement procedure in the near future. (R. at 35).

Bethea reported that the combined effects of these conditions caused him significant, disabling pain. In particular, Bethea reported as early as January of 2015 that he could not sit for more than an hour at a time without experiencing significant discomfort. (R. at 683-84). Bethea repeated these allegations at the August 23, 2017 disability hearing conducted in this case, where he stated that he would experience pain after sitting for less than one hour. (R. at 27). Indeed, the ALJ noted that Bethea sought to stand up during his hearing testimony due to his discomfort. (R. at 130).

Bethea's treatment records, and particularly those records from 2016 through 2017, documented Bethea's reported pain and discomfort. Records from January through August of 2015, reported that Bethea was experiencing severe back pain. (R. at 312, 314, 330-32, 338). Moreover, clinical notes from six different treatment sessions spanning from February of 2016 through June of 2017 indicated that Bethea walked with a mild limp, (R. at 747); had pain moving from a sitting to standing position, (R. at 756); ambulated with difficulty, (R. at 740, 750); experienced pain and an antalgic gait, (R. at 707); had difficulty walking, (R. at 710); had a significant antalgic gait, (R. at 758-59); and was fairly limited and debilitated by his pain. (R. at 758-59).

3

These clinical notes and Bethea's subjective complaints, in turn, were consistent with the report of Bethea's treating orthopedic specialist, Dr. Raymond Dahl. On December 15, 2016, Dr. Dahl submitted a medical source statement which opined that Bethea could sit for no more than two hours and stand or walk for no more than one hour per workday due to the joint disease in his hips and knees as well as his severe lumbar stenosis. (R. at 508).

Dr. Dahl's opinion was significant in several respects. First, it was the opinion of a treating source, and as such was entitled under the Commissioner's regulations to careful consideration and significant weight. Second, Dr. Dahl was an orthopedic specialist, a factor which gave his judgment regarding these essentially orthopedic limitations greater credence. Third, Dr. Dahl's opinion was the only opinion from an acceptable medical source detailing the functional limitations Bethea was experiencing due to his medical impairments from 2015 through 2017. Notably, there was no state agency medical opinion in this case, which had been assessed by an agency Single Decision Maker (SDM), rather than a doctor. This SDM decision had no weight in these proceedings since it is well established that "RFC determinations by SDM's should not be afforded any evidentiary weight at the administrative hearing level." Rhyder v. Colvin, No. 16-884, 2017 WL 81273, at *6 (M.D. Pa. Jan. 9, 2017). Moreover, the only other medical opinion cited by the ALJ was a temporally remote June 20, 2014,

notation recorded by a physician assistant on a check block form indicating that Bethea could return to work at that time. The summary notation both pre-dated the alleged onset of Bethea's disability and came from a source that was not deemed an acceptable medical source under the Commissioner's regulations. Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008); Long v. Colvin, No. 14-2192, 2016 WL 1320921, at *7 (M.D. Pa. Apr. 5, 2016).

It was against this medical backdrop that a hearing was conducted regarding Bethea's disability claim on August 23, 2017. (R. at 16-45). At this hearing, both Bethea and a Vocational Expert appeared and testified. (R. at 16-45). In the course of her testimony, the Vocational Expert acknowledged that if Bethea was limited to two hours sitting, and one hour each standing or walking during an 8-hour workday, he would be unemployable. (R. at 44). Thus, the Vocational Expert concluded that the physical postural limitations found by Dr. Dahl—the sole acceptable medical source to opine in this case and an orthopedic specialist who had actually treated Bethea— would render the plaintiff disabled.

Notwithstanding this evidence, following this hearing testimony, on November 1, 2017, the ALJ entered a decision denying Bethea's disability claim. (R. at 122-35). In this decision, the ALJ first found that Bethea met the insured status requirements of the Social Security Act. (R. at 127). At Step 2 of this

5

sequential analysis, the ALJ determined that Bethea's bilateral hip and knee impairments, along with his severe degenerative disc disease of the lumbar spine were severe impairments. (R. at 127-28). The ALJ found at Step 3 of this sequential analysis, however, that none of Bethea's impairments met a listing requirement. (R. at 128-29).

The ALJ then fashioned a limited, light work residual functional capacity (RFC) assessment for Bethea. (R. at 129). In doing so, the ALJ considered, but rejected, the only treating source and acceptable medical source opinion in the record, Dr. Dahl's opinion, which stated that Bethea could only sit for two hours per day and stand or walk for one hour per day. (R. at 133). While acknowledging that Dr. Dahl was both a treating source and an orthopedic expert whose opinion was entitled to significant weight, the ALJ rejected the work preclusive aspects of Dr. Dahl's expert opinion because the ALJ found that it was not consistent with the longitudinal record which the ALJ insisted showed that Bethea ambulated effectively with little or no impairment in his gait. Notably, the ALJ's decision relied primarily upon medical records from 2014 and 2015 to reach this conclusion, rather than the body of contemporaneous treatment records in 2016 and 2017 which described symptoms that were consistent with the limitations prescribed by Dr. Dahl. (R. at 133, citing R. at 312-39).

Having made these determinations, the ALJ concluded at Step 4 that Bethea's RFC would not permit him to perform his past work but found at Step 5 of this sequential analysis that there were significant jobs in the national economy that he could perform and denied his claim for disability benefits. (R. at 134-35).

This appeal followed. (Doc. 1). On appeal, Bethea presented several claims, including an argument that the RFC fashioned by the ALJ did not adequately consider Dr. Dahl's treating source opinion, the opinion of the only acceptable medical source in this case. The parties have fully briefed these issues and this case is ripe for resolution.

**JURISDICTION**

This court has federal question jurisdiction over this social security appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determination under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision

7

or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**DISCUSSION**

Before the magistrate judge, plaintiff argued that the ALJ erred in discounting the medical opinion of Dr. Dahl, plaintiff's treating orthopedic specialist. Judge Carlson found this issue had merit and was dispositive of the plaintiff's appeal. The government objects. After careful review, we will adopt the R&R.

The treating physician concluded that the plaintiff could stand and walk a total of one hour each and sit for two hours in an eight-hour work day. (R. at 132). In her RFC, the ALJ concluded that this opinion is too restricting, and that the plaintiff could sit for six hours in an eight-hour work day.[3] (R. at 129). Thus,

---

[3] Specifically, with regard to the RFC, the ALJ concluded:

> [T]he claimant has the residual functional capacity to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can sit for six hours in an eight-hour day, and he can stand and/or walk for up to two hours in an eight-hour day. The claimant can frequently operate foot controls, occasionally balance, stoop, climb ramps, and climb stairs, and never kneel, crouch, crawl, or climb ladders, or scaffolds. He can occasionally reach bilaterally, operate a motor vehicle, or tolerate exposure to temperature extremes and vibration,

the RFC indicates that the plaintiff can in fact do more than the only doctor's opinion in the record concludes he can do.  According to the R&R, the ALJ's decision is improper in that the ALJ's analysis related to her decision to reject the work preclusive aspect of Dr. Dahl's opinion was largely based "upon medical records from 2014 and 2015 . . . rather than the body of contemporaneous treatment records in 2016 and 2017 which described symptoms that were consistent with the limitations prescribed by Dr. Dahl."  (Doc. 17, at 22).

The Commissioner objects on the basis that the law permits an ALJ to discount a treating-source medical opinion without relying on a contrary medical opinion.  (Doc. 18, at 2).  The Commissioner further emphasizes that the ALJ properly followed the governing regulations in discounting Dr. Dahl's opinion. (Doc. 18, at 16).  We understand the Commissioner's position and assuming it is an accurate statement of the law, the ALJ's decision must nonetheless be supported by substantial evidence and comport with other aspects of the law.

It is also the law, however, that an ALJ may not reject uncontradicted medical opinions based on only lay reinterpretation of the medical evidence. Ferguson v. Schweiker, 765 F.2d 31 (3d Cir. 1985).  In Ferguson, the court found that "the ALJ acted improperly in disregarding the opinions of [the treating

---

      but he can never tolerate exposure to unprotected heights or moving mechanical parts.
(R. at 129).

9

physician] by finding them contrary to the objective medical evidence contained in the file. By independently reviewing and interpreting the laboratory results, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence." Id. at 37.

Here, the ALJ found that the plaintiff could sit for six hours in an eight-hour work day, which is a conclusion inconsistent with the findings of Dr. Dahl, who was not only the plaintiff's treating physician, but also offered the only medical opinion from an acceptable medical source in this case. We must decide if the ALJ's analysis amounts to appropriate evaluation of the medical opinions or an inappropriate substitution of her own lay opinion or "expertise" for the medical provider's opinions.

The government argues that the ALJ properly found that Dr. Dahl's opinion on the plaintiff's ability to stand, walk, and sit was too restrictive. This conclusion regarding Dr. Dahl's opinion is based on an alleged lack of support in plaintiff's treatment records for Dr. Dahl's assessed limitations of the plaintiff. (Doc. 18, at 21).

The record does not support the ALJ's conclusions. Plaintiff experienced severe back pain from January through August of 2015. (R. at 312, 314, 330-32, 338). Then, from February of 2016 through June of 2017, records reveal that

plaintiff walked with a mild limp, had pain moving from sitting to standing, ambulated with difficulty, experienced pain and an antalgic gait, had difficulty walking, had significant antalgic gait, and was fairly limited and debilitated by his pain. (R. at 707, 710, 740, 747, 750, 756, 758-59).

Despite this medical evidence, the ALJ decided to reject the limitations found by the plaintiff's treating physician because she found "discrepancies between the longitudinal objective evidence and Dr. Dahl's opinion . . . ." (R. at 133). Specifically, the ALJ concludes that "the sitting, standing, and walking limitations Dr. Dahl suggested are not consistent with the longitudinal examination findings of record, which show the claimant ambulates effectively and often with no issues or a mildly antalgic gait . . . ." (R. at 133). However, as mentioned above, the medical records from 2016 and 2017 support Dr. Dahl's opinion, and the ALJ fails to explain why she discounts these medical records that contrast her findings. Thus, we must conclude that it is her "lay opinion" and interpretation of the plaintiff's medical records. We find that this analysis is an improper rejection of a medical opinion based upon the ALJ's own interpretation of the medical records. This conclusion is not supported by substantial evidence, and the plaintiff's appeal will be granted.

**CONCLUSION**

Based on the preceding, the government's objections (Doc. 18) shall be overruled, Judge Carlson's R&R (Doc. 17) shall be adopted, the Commissioner's decision denying plaintiff's application for benefits shall be vacated, and this case shall be remanded to the Commissioner to conduct a new administrative hearing in accordance with this opinion. An appropriate order shall issue.

**BY THE COURT:**

**Date: December 20, 2019**   **s/ James M. Munley_____
JUDGE JAMES M. MUNLEY
United States District Court**